Cornelius DRESSEL, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellee.

No. 77–1144.

United States Court of Appeals, Eighth Circuit.

Submitted July 18, 1977.

Decided July 21, 1977.

R. J. Slater, Padberg, McSweeney & Slater, St. Louis, Mo., for appellant.

Barry A. Short, U. S. Atty., and Wesley D. Wedemeyer, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Cornelius Dressel (claimant) appeals from an order of the United States District Court for the Eastern District of Missouri upholding the decision of the Secretary of the Department of Health, Education and Welfare to deny him disability insurance benefits.[1] We reverse and remand for further evidentiary proceedings.

On July 27, 1973 claimant filed an application to establish a period of disability under 42 U.S.C. § 416(i) and to obtain disability insurance benefits under 42 U.S.C. § 423, which was denied after initial consideration and again following reconsideration. After an evidentiary hearing, held on August 5, 1975, an Administrative Law Judge decided that claimant was not under a disability within the meaning of the Act.

The evidence before the Administrative Law Judge may be summarized as follows. Claimant was born on September 8, 1921, has an eighth grade education, and has received no formal vocational training. His primary occupation was that of warehouseman and line dispatcher. In the latter position, he was responsible for dispatching 52 truck drivers. He testified that he began to suffer from shortness of breath and blackouts at work and was unable to perform his job satisfactorily. He was asked to leave for medical reasons, and terminated his employment on July 26, 1973. He has not suffered from blackouts since 1973.

There was little conflict in the medical evidence of claimant's physical impairments. A fair summary of the diagnoses of

claimant's attending physicians and those of other physicians who examined claimant is: pulmonary fibrosis in both lower lung fields, left axis deviation on electrocardiogram, possible angina pectoris, chronic bronchitis, cirrhosis of the liver, and shortness of breath. He may also, according to the summary report of a Dr. Biscotti, presented to the Appeals Council, but not to the Administrative Law Judge, suffer from diabetes. In addition, a mental or psychological impairment was diagnosed. Dr. Joseph, who examined claimant in September of 1973 at the request of the Social Security Administration, included anxiety state and hyperventilation syndrome in his diagnosis. He stated that these problems, rather than any organic factors, accounted for the degree of dyspnea (shortness of breath) which claimant described. Chronic anxiety reaction with a guarded prognosis was the diagnosis of a psychiatrist, Dr. Shuman, who also examined claimant at the request of the Social Security Administration in October of 1973. Dr. Shuman stated that claimant's breathing difficulties and blackouts could be hyperventilation episodes, which would be found in a person who becomes occasionally very anxious and can therefore be diagnosed as suffering from a chronic anxiety reaction. He did not find any evidence of depression. Hyperventilation syndrome was also diagnosed by claimant's attending physician, Dr. Jobe, upon claimant's hospitalization in December of 1974. Dr. Fitzgerald, a clinical psychologist, testified at the evidentiary hearing in August of 1975 that claimant was immature and had extreme anxiety. His impression was of anxiety reaction, and he found evidence of regression to an immature level of adjustment, dependency, fearfulness and suspicion.

The evidence was far less conclusive on the impact of claimant's physical and mental impairments upon his ability to work. Four experts gave opinions on the effect of

---

1. The Honorable Roy W. Harper, Senior District Judge, Eastern District of Missouri.

claimant's illnesses on his work ability.[2] Dr. Joseph found no organic reason to preclude claimant from returning to his former work, but felt that his anxiety state was intense enough to prevent it and probably indicated underlying depression. Dr. Sweet concluded from a physical examination of claimant in June of 1974 that claimant was disabled from performing his former work and would not be improving, as far as his breathing was concerned, at any time in the near future. He was of the opinion that claimant could perform a sedentary occupation, in an air conditioned environment where no irritant dust or gases in the air would impair his breathing. Dr. Biscotti's report, dated October, 1975, concluded that claimant was permanently disabled. However, no clinical findings or medical data support the summary report and its persuasive value is therefore greatly diminished. Social Security Regulations, 20 C.F.R. § 404.1526 (1976); *Kirkland v. Weinberger*, 480 F.2d 46, 49 (5th Cir.), *cert. denied*, 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973). After considering claimant's medical reports, work history, mental condition and the present labor climate and job opportunities, Dr. Fitzgerald, a clinical psychologist, was of the opinion that claimant could not compete on the open and competitive labor market. He disagreed with Dr. Sweet's opinion that the claimant could perform sedentary activity in an air conditioned environment for three reasons. The first was claimant's extreme physical condition. The second was extreme anxiety, a latent psychological condition made more pronounced by the physical condition. The third was the fact that natural decline through the aging process would worsen and intensify the former problems. Dr. Fitzgerald felt that claimant would not last five days even on a sedentary job, due to his anxiety, his inability to meet people and his poor verbal skills.

A vocational expert, Dr. Smith, was asked whether claimant could perform any work, given his physical and mental impairments and Dr. Sweet's assumption that he could perform sedentary work in an air conditioned environment. He replied that claimant could not perform any of the jobs he had in the past, but could perform a dispatch-type job, particularly that of taxi dispatcher, night clerk in a hotel or telephone solicitor.

The Administrative Law Judge made, *inter alia*, the following specific findings:

1. Claimant suffers from pulmonary fibrosis in both lower lung fields, left axis deviation on electrocardiogram, chronic bronchitis by history, possible element of angina pectoris, chronic anxiety reaction, history of cirrhosis of the liver and shortness of breath and nervousness.

2. Claimant's combined physical and mental impairments were not so severe as to have prevented sedentary work on or prior to March 16, 1973, and through the date of this decision.

3. Claimant was capable and is capable of performing substantial gainful activity on or prior to March 16, 1973, and through the date of this decision.

The Appeals Council declined to review the decision, and it therefore stands as the final decision of the Secretary. This action for judicial review of the Secretary's decision was brought pursuant to 42 U.S.C. § 405(g), and claimant now appeals from summary judgment granted in favor of defendant.

The issue presented for our consideration is whether substantial evidence on the record as a whole supports the determination that claimant is not disabled. This court has articulated a three-fold requirement for the determination of disability, which flows from the statutory definition of disability:

1. a medically determined physical or mental impairment which has or will last at least 12 months,

2. inability to engage in any substantial gainful activity, and

---

**2.** Unfortunately, Dr. Shuman, the psychiatrist, did not give an opinion on the effect that his diagnosis of chronic anxiety reaction would have on claimant's work ability.

3. the inability must be by reason of the impairment.[3]

*Adams v. Weinberger,* 548 F.2d 239, 243 (8th Cir. 1977); *Yawitz v. Weinberger,* 498 F.2d 956, 960 (8th Cir. 1974). Since the Administrative Law Judge found substantial mental and physical impairments, the first part of the test is met. The evidence does not suggest any reason other than these impairments for the claimant's alleged inability to perform substantial gainful activity, so that the third part of the test is also met. We are concerned, therefore, with the second component of the test, inability to engage in any substantial gainful activity.

█ Once a claimant has demonstrated that his impairment is so severe as to preclude him from performing his former work, the burden of proof then shifts to the Secretary to show that there is some other kind of substantial gainful employment which the claimant could perform. *Timmerman v. Weinberger,* 510 F.2d 439, 443 (8th Cir. 1975); *Klug v. Weinberger,* 514 F.2d 423, 426 (8th Cir. 1975). Theoretical ability to engage in substantial gainful activity is not sufficient; a determination must be made on what the claimant can do and what employment opportunities exist for a person who can do only what the claimant can do. *Brinker v. Weinberger,* 522 F.2d 13, 18 (8th Cir. 1975), *quoting from Celebrezze v. Bolas,* 316 F.2d 498, 501 (8th Cir. 1963). As is evident from the Administrative Law Judge's finding that claimant suffered from substantial mental and physi-

cal impairments and could perform only sedentary activity, the claimant herein demonstrated that he was unable to perform his former work. The question, therefore, is whether substantial evidence exists on the record as a whole to support the Administrative Law Judge's finding that, despite mental and physical impairments, which preclude him from returning to his former work, claimant can perform sedentary gainful employment.

█ The evidence which tends to support the Administrative Law Judge's finding that claimant can perform sedentary activity is Dr. Sweet's conclusion that claimant could perform a sedentary occupation in an air conditioned room and claimant's testimony that he was able to walk three blocks, climb a flight of stairs with resultant breathing difficulty, and drive an automobile.[4] However, Dr. Sweet did not consider the diagnosis of anxiety reaction in reaching his conclusion; his opinion is based solely on claimant's physical condition. His report does not contain any medical data on the combined effect of claimant's physical impairments and his psychoneurotic problem, chronic anxiety reaction, on his ability to work. After a careful review of the record, we have been unable to find any medical evidence on the combined effect of claimant's physical and psychological impairments upon which the Administrative Law Judge could have based his conclusion.[5] The only expert to evaluate the combined effect of claimant's physical and psychological problems on his ability to work was Dr.

3. "Disability" for purposes of the Social Security Act is defined in 42 U.S.C. § 423(d)(1)(A) as follows:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Section 423(d)(2) provides in relevant part: For purposes of paragraph (1)(A)— (A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of sub-

stantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives . . . . .

4. The testimony of Dr. Smith, a vocational expert, in response to a hypothetical question rests upon the assumed accuracy of Dr. Sweet's conclusion that claimant could perform sedentary activity in an air conditioned room.

5. Although Dr. Joseph found no purely organic reasons to prevent claimant from returning to his former work, he felt that claimant's anxiety state could be intense enough to preclude his doing so.

Fitzgerald, who concluded that claimant was not able to perform even sedentary work.[6]

We do not believe that a medical report (that of Dr. Sweet) which considers claimant's physical impairments only, is substantial evidence for the finding that a claimant who is found to suffer from both physical and psychological impairments can perform sedentary work.[7] A claimant's illnesses must be considered in combination and must not be fragmentized in evaluating their effects. *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The fact that each illness standing alone may not be disabling is not conclusive on the question of whether the individual is disabled. *Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir. 1974). This court held in *Klug v. Weinberger, supra*, that medical reports which did not consider claimant's mental or psychological impairment were not substantial evidence for a finding of no disability when a psychological basis for an illness was found, since evidence of a negative organic situation does not rule out the existence of a psychological condition which is disabling. *Id.* at 427.

Given the Administrative Law Judge's finding that claimant suffered from chronic anxiety reaction, Dr. Sweet's report is not substantial evidence for the determination that claimant could perform sedentary activity, since it is based on a diagnosis of physical illnesses only, and does not consider the combined effect of claimant's physical and psychological impairments on his ability to work. Reliance on Dr. Sweet's report is particularly troublesome due to the evidence in the record regarding the effect of chronic anxiety on claimant's physical condition. Of particular significance in a case involving both physical and psychological impairments is the medically demonstrable operation of the mental-psychological impairments on the claimant's general physical condition and the resultant effect on his ability to engage in significant gainful activity. *Broussard v. Gardner*, 382 F.2d 278, 279 (5th Cir. 1967). Dr. Sweet assumed that claimant could perform sedentary activity in an air conditioned environment where no dust or gases would impair his breathing. Drs. Joseph and Shuman, however, thought the chronic anxiety reaction and resultant hyperventilation accounted for the shortness of breath and blackouts. Thus an air conditioned environment may not prevent claimant from suffering severe breathing problems which might prevent him from performing even sedentary work. Nor is claimant's testimony on his ability to work and drive, without more, substantial evidence for the Administrative Law Judge's finding of no disability. We therefore hold that the Administrative Law Judge's decision was not supported by substantial evidence on the record as a whole.

In light of the foregoing we find it unnecessary to consider appellant's argument that the Secretary failed to show local hiring practices in regard to handicapped individuals such as claimant, or to give sufficient evidence on the availability of jobs claimant can allegedly perform. However, we note that under the 1968 Amendments to the Social Security Act, which added § 423(d)(2)(A), the Secretary does not have to show that the claimant would be hired if he applied for possible jobs, or that the job

---

6. We do not agree with the district court's conclusion that this is merely a conflict in the opinions of medical experts, namely Drs. Sweet and Fitzgerald. Since Dr. Sweet's conclusion does not take into account the diagnosis of chronic anxiety reaction, as does that of Dr. Fitzgerald, we cannot conclude that the opinions conflict, but only that they are not drawn from the same facts.

7. It is clear that the definition of disability in the Social Security Act covers psychological disabilities, and that psychoneurosis or chronic anxiety state can be a disability if it is of the requisite severity. 42 U.S.C. § 423(d)(1)(A), (d)(3); *Lewis v. Weinberger*, 541 F.2d 417, 420 (4th Cir. 1976); *Dean v. Gardner*, 393 F.2d 327 (9th Cir. 1968). The statement that "the mere existence of a psychoneurosis or anxiety reaction does not constitute a disability," found in *Alvarado v. Weinberger*, 511 F.2d 1046, 1049 (1st Cir. 1975), when read in context, simply indicates that one who can engage in substantial gainful activity despite the psychoneurosis is not disabled under the Act.

opportunities existed within the local area, but only that job opportunities exist in the national economy. *Miller v. Finch*, 430 F.2d 321, 324 (8th Cir. 1970); *see Gentile v. Finch*, 423 F.2d 244, 247 (3d Cir. 1970), and cases cited therein. The legislative history shows that the intent of the amendment is to provide a definition of disability which can be applied uniformly throughout the nation, without regard to local hiring practices or employer preferences. S.Rep.No. 744, 90th Cong., 1st Sess. 49 (1967), *reprinted in* 1967 U.S.Code Cong. & Admin.News, pp. 2834, 2880–82.

For the reasons set forth above, we reverse the decision below and remand to the district court with directions to remand to the Secretary for further consideration of the combined effect of claimant's physical and psychological impairments on his ability to perform sedentary activity.