Shannon **RUSSELL**, Plaintiff,

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

No. S89–0164–C.

United States District Court, E.D. Missouri, S.D.

Jan. 14, 1991.

Shannon Russell, Gideon, Mo., pro se.

Thomas E. Dittmeier, U.S. Atty. by Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for defendant.

## ORDER

LIMBAUGH, District Judge.

IT IS HEREBY ORDERED that the review and recommendation of United States Magistrate David D. Noce is SUSTAINED, ADOPTED and INCORPORATED herein.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

IT IS FINALLY ORDERED, ADJUDGED and DECREED that judgment is hereby entered in favor of defendant and against plaintiff in this cause of action.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

DAVID D. NOCE, United States Magistrate Judge.

This matter is before the Court on the cross-motions of the parties for summary

judgment pursuant to Rule 56, Federal Rules of Civil Procedure. This cause was referred to the undersigned United States Magistrate for review and a recommended disposition. 28 U.S.C. § 636(b).

On January 25, 1985, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 *et seq.* (Tr. 183–86.) Plaintiff alleged that he became disabled on July 3, 1984 due to a back injury. (Tr. 183.) Plaintiff's applications were denied initially (Tr. 175–79) and upon reconsideration (Tr. 168–72), and by a decision of an Administrative Law Judge (ALJ) dated August 30, 1985. (Tr. 275–81.) On October 3, 1985, the Appeals Council of the Social Security Administration remanded the case because of a change in the rules as a result of the Social Security Disability Benefits Reform Act of 1984. (Tr. 272.)

On December 23 1985, while the disability benefit application was pending, plaintiff filed an application for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* (Tr. 294–303.) Both applications were denied initially (Tr. 288–93, 335–38) and on reconsideration. (Tr. 282–87, 309–13.)

On July 30, 1986, a hearing was held before an ALJ. Plaintiff was represented by counsel and testified. (Tr. 76–138.) On November 28, 1986, the ALJ issued a decision unfavorable to plaintiff, holding that plaintiff was not under a "disability" as defined in the Social Security Act at any time when he met the earnings requirement of the law [1], or at any time through the date of the decision. (Tr. 37–48.) On July 22, 1987, the Appeals Council granted plaintiff's request for review, vacated the hearing decision, and remanded the case for further proceedings. (Tr. 22–24.) On remand, the ALJ was to obtain a psychological consultative examination and a medical assessment describing plaintiff's ability to reason or make occupational, personal, or social adjustments. (Tr. 24.)

On March 8, 1988, another hearing was held before an ALJ. Plaintiff testified at the hearing but was not represented by counsel. (Tr. 138–61.) On June 13, 1988, the ALJ issued a decision unfavorable to plaintiff. (Tr. 9–16.) After considering additional medical evidence, the Appeals Council denied plaintiff's request for review. (Tr. 4–5, 457–58.) Thus, the decision of the ALJ stands as the Secretary's final decision. 42 U.S.C. § 405(g).

Plaintiff was born on February 29, 1940. (Tr. 151.) He stands five feet eight inches tall and weighs 174 pounds, having lost 70 pounds. (Tr. 152.) Plaintiff's relevant past work experience includes that as a painter, foundry worker, mechanic, and farmer. (Tr. 153–54.) He has completed high school and is now attending college in Columbia, Missouri. (Tr. 152–53.) He lives in the dormitory and is a full-time student, carrying 15 hours. (Tr. 153–54.) Vocational rehabilitation is paying for his education. (Tr. 153.)

Regarding his daily activities, plaintiff testified that he gets up at 6:30 a.m., eats breakfast, and goes to his first class at 8:00 a.m. His first class lasts two hours, and the next two classes are 50 minutes each. He stated he did fairly well during class as long as he could get his shoulder blades over the back of the chair and had time to lie down between classes. He goes to the lunchroom for dinner. In the evening he lies in bed and reads. Plaintiff stated that he has to read on his back and has trouble when he has to get up to draw for his fine arts class because he has trouble holding his arms up. He said he does not do much socializing, but he does lie on the couch in the lounge to watch television. (Tr. 156.)

Regarding his exertional capabilities, plaintiff testified that he can walk one-eighth of a mile, but cannot stand in line. He drove to the hearing, although he stated that he did not drive from Columbia, Missouri. (Tr. 156–57.) He can sit for 50 minutes in a comfortable chair and can lift

---

**1.** To be eligible for benefits under Title II, plaintiff must establish that he became disabled prior to when his insured status expired on June 30, 1985. *See,* 42 U.S.C. §§ 416(i)(3)(B) and 423(c)(1)(B). To be eligible for SSI benefits under Title XVI, plaintiff must establish that he was disabled while his application was pending. 42 U.S.C. § 1382(c).

books weighing four or five pounds. He can squat but he cannot bend. (Tr. 158.) He stated that lying on the floor, for 15 minutes, helps the pain. (Tr. 159.) Plaintiff testified that he is now depressed because his wife will not let him see his children, but that if he had a good back, he would not have any problems with depression. (Tr. 159.) He denied suffering disabling depression or any other psychiatric problem. (Tr. 141, 145–46, 159.) When asked why he could not be a self-service gas station attendant, he said he cannot do the sitting or standing required. (Tr. 158–59.)

The medical evidence includes the reports of various physicians as well as records of hospital and clinic visits. Office notes from Gordon Eller, M.D., an orthopedic surgeon (Tr. 260, 378), reveal that on July 3, 1984, plaintiff suffered a back injury. X-rays showed no fracture, and his discomfort eased with medication. He was told to stay off work for one to two weeks and released with prescriptions for Tylenol # 3 and Soma. He continued to report back pain on July 13, 1984, but he had been actively campaigning for a seat in Congress rather than resting. It was recommended that he use a back corset, and pursue physical therapy. On July 27, 1984, plaintiff indicated that a heating pad improved his condition, and that he was not taking medication. After again reporting pain on August 10, 1984, x-rays of plaintiff's thoracolumbar spine revealed compression fractures of T–10 and T–11. He was placed in a back brace. When Dr. Eller next saw plaintiff, he suggested plaintiff try a job not requiring bending, stooping, or lifting more than 10 pounds. (Tr. 257–59.)

When plaintiff saw John R. Crockarell, M.D., on August 15, 1984, physical examination was essentially unremarkable. (Tr. 249.) The doctor requested a lumbar spine series which revealed a mild wedge compression deformity of T–11 and T–12. (Tr. 247–48, 250.)

Records from the Campbell Clinic indicate that in September 1984, plaintiff had decreased back motion, but no other significant limitation. The doctor believed that plaintiff suffered muscle tightness, and he recommended physical therapy. (Tr. 223, 251, 407.)

Plaintiff was hospitalized twice in October 1984, for continued investigation of his complaints of back pain. It was noted that his complaints of pain were out of proportion to his medical history. Additional testing, including a CT scan, revealed no etiology for the alleged discomfort. While hospitalized, plaintiff stated that he had recently attempted suicide. Psychiatric difficulties were suspected, but plaintiff refused treatment. (Tr. 212–22, 224–25, 244–45, 396–406, 408.)

Dr. Eller hospitalized plaintiff on January 13, 1985, for further evaluation of mild compression fractures, and possible neuritis at T–11. On admission, plaintiff had some tenderness in the chest and mid-lumbar regions, but straight leg raising and a sensory examination were normal. (Tr. 238–39.) On January 22, 1985, plaintiff received an intercostal block at T–11 on the right, which resulted in some improvement of his symptoms. (Tr. 236, 241.) Physical therapy notes from January 23, 1985, indicate that plaintiff could walk one mile in 25 minutes, and his range of back motion was approximately 75% of normal, except for standing extension which was 50–75% of normal. Although he had some tenderness in his back, there was no muscle spasm or tightness. (Tr. 229.) When Dr. Eller discharged plaintiff on January 24, 1985, he indicated that plaintiff still had difficulty pulling, lifting, bending, or stooping. The doctor recommended use of a TENS unit and physical therapy. (Tr. 237.)

When plaintiff continued to report low back pain, Dr. Eller suggested another intercostal block which was performed on February 8, 1985. (Tr. 227–28, 254, 268, 374.) One month later, plaintiff stated that the last intercostal block had not relieved his discomfort, but he had been taking only Tylenol for relief of pain. The doctor prescribed Amitriptyline, an antidepressant, and Prolixin, a drug used to manage psychotic disorders, and told plaintiff to use his TENS unit. Dr. Eller believed that

plaintiff could probably return to work in one month. When plaintiff returned on April 22, 1985, he had recently been in an accident and had some stiffness as a result. Dr. Eller stated that plaintiff's condition was improving and recommended only a thoracic support. On May 28, 1985, plaintiff indicated that the thoracic support helped considerably. (Tr. 253, 269, 375.) By June 25, 1985, Dr. Eller believed that plaintiff could return to work on a trial basis. On August 20, 1985, however, plaintiff stated that he attempted to perform his job as a painter, but suffered too much chest and back pain to continue. (Tr. 270–71, 376.)

Plaintiff saw Ronald C. Hertel, M.D., an orthopedic surgeon (Tr. 395), on September 19, 1985. (Tr. 391–94.) Examination revealed that plaintiff walked with a slight antalgic gait, walked on the balls of his feet with difficulty, and could not walk on his left heel. Tenderness was present over his spine and over his tenth and eleventh ribs. He had a 30% restriction of left lateral bending, but could bend forward to within 27 centimeters of the floor. Plaintiff complained of weakness of his right leg, and exhibited a non-anatomical sensory deficit on the right. There was no atrophy. X-rays revealed a "solidly united compression fracture of the body of D–11." Although there was a "suggestion" of decreased height of D–10, this was "very minimal." (Tr. 393.)

On October 22, 1985, Dr. Eller stated that plaintiff suffered a partial permanent disability of 20% of the body as a whole. He did not believe that surgery was necessary. (Tr. 376.)

On Dr. Hertel's recommendation, plaintiff underwent a dorsal and lumbar myelogram on November 1, 1985. The test revealed no significant abnormalities, and the doctor concluded that surgery was not necessary. (Tr. 364, 369, 372, 388–90.) On November 18, 1985, Dr. Hertel stated that:

> [Plaintiff] has a solidly united fracture of the body of D–11 with minimal compression. He has a negative myelogram. He has no evidence of instability on flexion or extension film. In my opinion, further treatment either from a physical therapy standpoint or surgical standpoint is not indicated. If the pain is severe enough from the patient's standpoint then he would be a candidate for a pain clinic[.] ... There is no contraindication, despite the patient's symptoms, of him returning to light work. Solely on the basis of his symptoms, he is not capable of returning to his regular job. The patient's subjective findings are significantly greater than one would anticipate following the solid union of the fracture[.]

The doctor recommended plaintiff temporarily wear a lumbosacral support. (Tr. 371, 387.) Dr. Hertel noted on January 15, 1986, that plaintiff was not weaning himself from the lumbosacral support as instructed. (Tr. 386.)

On January 24, 1986, W.E. Morehead, M.D., a general practitioner (Tr. 385), indicated that plaintiff should avoid heavy lifting, bending, or stooping. He believed, however, that there was a fair possibility plaintiff could be gainfully employed. (Tr. 379–80.)

Dr. Eller stated on January 28, 1986 that the only objective finding in plaintiff's back was the old compression fracture. Although plaintiff still complained of pain, the doctor recommended vocational rehabilitation to find a job which did not require lifting, bending, or stooping. (Tr. 377.)

When plaintiff saw Grant Izmirlian, M.D., on January 16, 1986 (Tr. 409–15), he reported pain in his neck, mid-back, and right ribs. Wearing a back brace reportedly helped, but he had to take Naprosyn, an anti-inflammatory drug, and "Vallorods" daily. (Tr. 411.) On examination, the doctor noted sensory and strength abnormalities in plaintiff's feet and legs, and found spasm and tenderness in plaintiff's back and neck. There was some decreased range of motion. Straight leg raising was reportedly positive at 70 degrees, but reflexes were normal. Plaintiff walked with a stiff right leg. The doctor believed that plaintiff suffered an injury to his back, neck, legs, and right ribs; and that he had asthmatic bronchitis. (Tr. 412–13.) Dr. Iz-

mirlian concluded that plaintiff was temporarily disabled. (Tr. 415.)

Plaintiff underwent a consultative psychiatric evaluation by Farida Farzana, M.D., on July 18, 1986. Dr. Farzana believed that plaintiff was suffering a major depression which would affect his ability to work. (Tr. 416–20.)

Plaintiff returned to Dr. Hertel on August 4, 1986. Examination revealed spinal tenderness, but no muscle spasm. Plaintiff walked with an antalgic gait on the right, and had difficulty walking on his heels. He could bend to within 47 centimeters of the floor, and exhibited some limitation of lateral bending. There was a slight decrease in ankle reflexes, and his right calf was one centimeter smaller than his left. He had a nonanatomical sensory deficit in his legs. Straight leg raising was negative to 80 degrees bilaterally. (Tr. 427–28.) After taking additional x-rays on August 13, 1986, Dr. Hertel concluded that plaintiff's symptoms were—

> far in excess of that which can be substantiated on physical examination. He has solid union of the fracture of the body of D–12.... [F]urther specific treatment will not improve the symptoms. Despite the symptoms he may return to some light form of work. He is not capable of returning to work involving climbing, bending and stooping.

(Tr. 426.)

On April 23, 1987, plaintiff told Joseph H. Miller, M.D., a neurological surgeon, that he needed information for Social Security so he could obtain disability benefits which would enable him to return to college. He reported taking Valrelease, which is timed release Valium, twice daily. He also took Naprosyn and aspirin. Examination revealed that although plaintiff arose and moved slowly, he could perform all maneuvers, walk on his heels and toes, stand on either leg, and bend at the knee. There was no muscle spasm or reduced motion of his cervical spine, but plaintiff complained of pain. Despite plaintiff's refusal to bend his back, the doctor observed that he could sit in a chair and touch his toes. Straight leg raising, sensation, and reflexes were normal. (Tr. 432–33.) After reviewing previous test results, Dr. Miller concluded on May 11, 1987, that:

> [Plaintiff's] studies are quite normal except for a very mild compression fracture. His neurological examination shows no objective deficit. The patient's complaint [sic] are not supported by his findings on the studies. I informed him that I did not think he had a neurosurgical problem. I felt that he needed to see a psychiatrist.

Dr. Miller also noted that plaintiff had driven two and one-half hours to reach his office. (Tr. 431.)

James L. Becker, M.A., a psychologist, performed a psychological evaluation on September 1, 1987. Mental status evaluation revealed that plaintiff was alert and oriented, but he appeared moderately depressed and somewhat anxious. Although plaintiff occasionally rambled, the psychologist found no evidence of a formal thought disorder, paranoia, or psychosis. Plaintiff demonstrated little insight and mildly impaired judgment. The psychologist stated that plaintiff appeared to be in pain. Following psychological testing, Mr. Becker suggested that plaintiff may suffer a more extreme response to pain because he was not well adjusted before his injury. The Minnesota Multiphasic Personality Inventory (MMPI) reportedly revealed a profile consistent with hypochondriacal traits, depression, a character disorder, unusual thought process, restlessness, and functional physical complaints. Mr. Becker diagnosed somatization disorder with depression. (Tr. 435–38.) He indicated that plaintiff had a good or fair mental ability to do work-related activities in all areas except for the ability to deal with work stress and function independently. He believed that plaintiff's capacity in those areas was poor or none. (Tr. 439–40.)

On December 23, 1987, plaintiff underwent radiologic testing. A thoracic spine series revealed mild compression deformities of T–10 and T–11 which could have been congenital or related to an old injury. There was no malalignment of the thoracic spine, and no acute fractures. (Tr. 457.)

Bone scintigraphy showed mild abnormalities in mid-thoracic spine, sternomanubrial joint, and left first costochondral junction which were either post-traumatic or the result of early degenerative disease. (Tr. 458.)

Plaintiff appeared at the Barnes Hospital emergency room on January 24, 1988, complaining of increased pain in his back and right leg. Examination revealed no sensory or strength abnormalities, and plaintiff's neck was supple. He received prescriptions for Flexeril and Motrin, and was told to rest until he could be seen in a clinic. (Tr. 447–49.) At the neurosurgery clinic on January 30, 1988, plaintiff reported pain, but stated that he was attending classes at the business school at Columbia, Missouri. He appeared to be in mild distress. On examination, there were few objective signs, and there was a poor correlation of objective findings to subjective complaints. Plaintiff was told that he needed long-term care to manage his symptoms. He was to continue taking medication. (Tr. 450–51.)

The ALJ issued his decision on June 13, 1988. (Tr. 9–16.) He concluded that plaintiff has a mild thoracic compression fracture, early degenerative changes of the spine, and depression; but that he does not have an impairment or combination of impairments listed in or medically equivalent to one listed in the Secretary's Listing of Impairments. *See,* C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that plaintiff's complaints of pain were not credible. He further determined that plaintiff could not perform work involving more than light lifting, or work requiring bending, stooping, or climbing. Since plaintiff's past relevant work required heavy exertion, the ALJ found that he could not return to such work. However, he found that plaintiff did have the residual functional capacity (RFC) to perform the full range of sedentary work. Although the ALJ found that plaintiff did not have skills which are transferable to sedentary work, he determined that plaintiff's age, education, work experience, and capacity for the full range of sedentary work directed a finding that plaintiff was not disabled under the Act. (Tr. 16.)

Plaintiff argues that the ALJ erred in finding that he was not disabled but rather possessed the RFC to perform the full range of sedentary work. Plaintiff contends that such a finding is not supported by the medical or other evidence.

The Secretary's decision is conclusive upon this Court if it is supported by relevant evidence a reasonable person might accept as adequate to support the decision, *i.e.,* "substantial evidence." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). Plaintiff has the burden of showing that he has a disabling impairment. *Russell v. Secretary of HEW,* 402 F.Supp. 613, 618 (E.D.Mo.1975), *aff'd,* 540 F.2d 353 (8th Cir.1976).

■ The ALJ is required to consider the combined effect of all of plaintiff's impairments. *Dressel v. Califano,* 558 F.2d 504, 508 (8th Cir.1977). "The fact that each illness standing alone may not be disabling is not conclusive on the question of whether the individual is disabled." *Id.*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Initially, the undersigned notes that Exhibit D of plaintiff's brief is a copy of a medical report dated January 23, 1989. That report was not available to the Appeals Council, and therefore the District Court cannot consider that evidence. *See,* 42 U.S.C. § 405(g). Moreover, such evidence would not be material to the Secretary's decision because it is not probative of plaintiff's condition during a relevant time, which is at or before the disability hearing decision is issued. 20 C.F.R. §§ 404.620 and 416.330.

In *McCoy v. Schweiker,* 683 F.2d 1138, 1142 (8th Cir.1982) (en banc), the Court held that if plaintiff has an impairment not listed in the Secretary's Listing of Impairments, and cannot resume his or her past relevant work, the ALJ must determine plaintiff's residual functional capacity (RFC), age, education, and relevant work experience, and apply these findings to the grid of 20 C.F.R. Part 404, Subpart P, Appendix 2. In cases where the grid ap-

plies, the ALJ need not call a vocational expert to be a witness. *Id.*, at 1148. If the ALJ established that plaintiff is a member of the group the grid characterizes as non-disabled and if the ALJ properly applied the grid, then the ALJ has met his or her burden of proving that jobs exist in the national economy for people such as the plaintiff. *Id.*, at 1147–49.

■ The Secretary has the burden of establishing, by medical evidence, that the claimant has the RFC to engage in other types of employment. *Id.*, at 1147. In general, RFC is the most important issue under the guidelines. *Id.* The RFC to be applied to the grid "is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Id.*

■ Once the ALJ determines plaintiff's RFC, he or she must also consider whether plaintiff's alleged "nonexertional impairments are so significant that the applicant does not possess the residual functional capacity on which the guidelines are predicated." *Id.*, at 1148. The ALJ must determine how much " 'work capability is further diminished' by nonexertional impairments." *Id.* If the nonexertional impairments are significant, the grid is inapplicable and the ALJ must rely on vocational expert testimony. *Tucker v. Schweiker,* 689 F.2d 777, 780 (8th Cir.1982). Nonexertional impairments include mental, sensory or skin impairments, environmental restrictions, psychiatric impairments, and pain. *McCoy, supra,* 683 F.2d at 1148.

■ The undersigned notes that the Secretary is obliged to evaluate subjective complaints with due consideration for credibility, motivation, and medical evidence of impairment. *See, Timmerman v. Weinberger,* 375 F.Supp. 641, 645 (E.D.Mo.1974), *aff'd,* 510 F.2d 439 (8th Cir.1975). Moreover, it is the duty of the Secretary, not this court, to assess the credibility of the claimant and other witnesses. *Tucker v. Heckler,* 776 F.2d 793, 796 (8th Cir.1985); *Smith v. Heckler,* 760 F.2d 184, 187 (8th Cir.1985). The Secretary must be upheld so long as his credibility determination is

supported by substantial evidence, even if substantial evidence points the other way. *See, Baker v. Heckler,* 730 F.2d 1147, 1150–51 (8th Cir.1984). In reviewing the Secretary's determination of a claimant's pain, this Court must consider: (1) whether, according to *Polaski, infra,* the Secretary considered all of the evidence relevant to plaintiff's complaints of pain, and (2) whether that evidence contradicted plaintiff's account, so that the Secretary could discount plaintiff's testimony for lack of credibility. *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir.1987).

■ The Eighth Circuit has instructed that the credibility of subjective complaints is to be evaluated on the basis of, *inter alia,* the records of the treating and examining physicians, the objective medical evidence, the claimant's statements to his doctors, the extent of medical treatment and the dosage, side effects, and effectiveness of medication, the claimant's daily activities, the frequency, intensity and duration of the alleged pain, and functional restrictions. *See, Polaski v. Heckler,* 739 F.2d 1320 (order), *supplemented,* 751 F.2d 943 (8th Cir.1984), *vacated,* 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974, *adhered to on remand,* 804 F.2d 456 (8th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987). Subjective complaints may not be discredited, simply because the objective medical evidence does not fully corroborate them, or solely on the basis of the ALJ's personal observations of the claimant. *See, Taylor v. Bowen,* 805 F.2d 329, 331 (8th Cir.1986); *Conley v. Bowen,* 781 F.2d 143, 146–47 (8th Cir.1986). The Secretary may discredit subjective complaints, if there are inconsistencies in the evidence on the record as a whole. *Herbert v. Heckler,* 783 F.2d 128, 131 (8th Cir.1986); *Smith, supra,* 760 F.2d at 187.

■ Under *Polaski* and *Benskin,* plaintiff's assignment of error must fail. The ALJ expressly recognized that the law did not require full corroboration between the subjective complaints and the objective medical evidence. Nevertheless, plaintiff bears the burden of showing by objective

medical evidence that he has an impairment which could cause his pain and symptoms. In this case, plaintiff has failed to meet his burden. Despite multiple x-rays, myelograms, a bone scan, and a CT scan, objective studies show no impairment which could be the source of plaintiff's pain. The medical evidence shows only a mild compression deformity and early degenerative disease. The compression deformity occurred in July 1984, and healed by October 1984. Plaintiff's treating physicians have consistently reported that it imposes some limitations, but it does not preclude lighter work. The objective medical evidence of exertional impairment required by the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 3(a)(1), 98 Stat. 1794 (1984) (codified at 42 U.S.C. § 423(d)(5)(A) is simply lacking.

Inquiry into the possibility of some type of somatoform disorder was made by the ALJ upon the ordering of a consultative psychiatric examination of plaintiff. The ALJ noted that plaintiff has not had psychiatric treatment. When it was suggested, he rejected it. At the hearing, plaintiff indicated that depression did not keep him from working. The recent consultative examination showed no significant psychiatric problems. Plaintiff was alert, oriented, and without memory problems. Mr. Becker observed no formal thought disorder or indications of psychosis. (Tr. 435–36.) The ALJ acknowledged that both Mr. Becker and Dr. Farzana, a consulting psychiatrist, believed that plaintiff was depressed. However, the ALJ found that the evidence does not show any restrictions in plaintiff's daily activities or difficulty in maintaining social functioning as a result of depression. He noted that plaintiff was active in local politics, attends college, lives in a dormitory, reads, studies, follows the news, drives a car, and maintains social contacts. The ALJ is entitled to reject any opinion that is not supported by the evidence. *See, Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985); *see also, Vasquez v. Schweiker*, 701 F.2d 733, 736 (8th Cir.1983).

According to *Polaski*, the credibility of subjective evidence of pain and non-exertional restrictions is to be evaluated on the basis of all the evidence of record. The ALJ made such an evaluation based on both the objective medical reports and findings of plaintiff's credibility. In evaluating the credibility of plaintiff's complaints, the ALJ determined that several inconsistencies existed between plaintiff's testimony and other evidence in the record. On examinations, physicians have rarely found plaintiff to be in acute distress. When he was seen at Barnes Hospital, where plaintiff indicated the pain was worse than usual, it was observed that he was in only mild distress. At the hearing, he said that he was in pain, but he showed no signs of being in discomfort. The ALJ's observations at the hearing were one factor which could legitimately be considered in his credibility determination. *Ballowe v. Harris*, 650 F.2d 130, 133 n. 2 (8th Cir.1981). Although plaintiff testified at the hearing that he could only walk one-eighth of a mile, in physical therapy he was able to walk one mile. Despite his complaints of pain, the physical therapy notes indicate that plaintiff tolerated exercises at therapy quite well. Plaintiff reported to a pain clinic doctor that his pain was minimal when he was moving, and that he had little trouble standing for any length of time. At the hearing, however, plaintiff testified that he could not stand in a line. He further testified that sitting is very painful, yet he sits through his college classes. Furthermore, sensory examinations have been inconsistent, and his alleged sensory loss has never been in an anatomical pattern consistent with disk involvement. Other findings of lack of credibility were based on plaintiff's intermittent employment earnings record and testing which showed a pain exaggeration profile. The ALJ applied the appropriate standard by basing his credibility determination on inconsistencies in the evidence on the record as a whole. *See, Conley, supra.* In light of conflicting evidence, it is the duty of the Secretary and not this court to assess witness credibility. *Smith, supra*, 760 F.2d at 187. The ALJ did not err by disregarding plaintiff's claims, and his findings as to

plaintiff's allegedly disabling back pain should stand.

## RECOMMENDATION

For the reasons set forth above, it is the recommendation of the undersigned United States Magistrate that the motion of defendant for summary judgment be granted and that the motion of plaintiff be denied. The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation.