**Jeffrey A. CARLOCK, Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary, Department of Health and Human Services, Appellee.**

**No. 89–1807.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1990.

Decided May 9, 1990.

Denver L. Thornton, El Dorado, Ark., for appellant.

Darlynda K. Bogle, Baltimore, Md., for appellee.

Before ARNOLD and BOWMAN, Circuit Judges, and HUNTER, Senior District Judge.[*]

ELMO B. HUNTER, Senior District Judge.

Jeffrey Carlock appeals from the district court's [1] order affirming the decision of the Secretary of Health and Human Services (the Secretary) to deny Carlock's application for disability insurance benefits under 42 U.S.C. §§ 416(i) and 423 and his application for supplemental security income benefits under 42 U.S.C. § 1381a. For the reasons discussed below, we affirm the decision of the district court.

I. Background

Carlock is a twenty-eight year old male with a high school education who has past

---

[*] The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

[1] The Honorable Oren Harris, United States District Court for the Western District of Arkansas.

relevant work experience as a machine operator and as a laborer. He is six feet three inches tall and weighs 218 pounds. On May 30, 1986, Carlock injured his back when he attempted to lift a fifty-five gallon drum at work. He applied for disability insurance benefits and for supplemental security income benefits on November 21, 1986, and June 9, 1987, respectively, alleging disability since June 18, 1986, due to a lumbosacral strain. His applications were denied administratively, and he requested a *de novo* hearing before an ALJ.

At the hearing held on August 25, 1987, Carlock testified that he suffered constant, moderate pain in his back and right leg. Carlock regularly took four different kinds of muscle relaxers, but the medication did not effectively relieve his pain. According to Carlock, he could not bend or squat and had difficulty sitting for a two hour period of time. Carlock did not perform household chores or yard work. He was no longer able to hunt and fish. Following the recommendation of his doctor, Carlock walked approximately three-fourths of a mile daily.

On August 3, 1987, Carlock began studying industrial electronics and math at a vocational school. Carlock testified that he typically arose about 5:30 a.m., dressed himself and drove thirty to thirty-five miles to the vocational school. He stood in back of the classroom or walked around during class when sitting became painful. The school day ended about 3:45 p.m., and Carlock drove himself home. Carlock's testimony was corroborated by the testimony of his wife.

Medical evidence contained in the record reveals that Carlock's primary treating physician has been Dr. J.C. Calloway, an orthopedic surgeon. A straight leg raising test performed on Carlock by Dr. Calloway on June 30, 1986, indicated that Carlock suffered from a ruptured disc. However, a myelogram performed on July 10, 1986, pursuant to Dr. Calloway's recommendation revealed no evidence of a herniated disc.

Carlock was examined by Dr. Austin Grimes on September 12, 1986. Dr. Grimes tentatively diagnosed Carlock with a herniated disc and degenerative disc disease and recommended an MRI of the lumbar spine. The MRI, performed on September 23, 1986, was normal. An EMG and a nerve conduction study performed on October 1, 1986, were also normal.

Dr. Calloway referred Carlock to Dr. Ronald Williams, a neurosurgeon, who conducted a CAT scan which indicated Carlock did not have a demonstrable disc lesion. Dr. Williams referred Carlock to Dr. Thomas Kovaleski, M.D., a rheumatologist. On March 27, 1987, Carlock had a normal EMG and nerve conduction study. Dr. Kovaleski noted that the straight leg raising test was still positive.

The medical evidence of record was submitted to Dr. Charles McKenzie, a board certified orthopedic surgeon, for his opinion in his capacity as Secretary designated medical advisor. Dr. McKenzie reviewed the medical records and noted Carlock's extensive medical evaluation from a rheumatological, orthopedic, and neurological standpoint. He stated that the diagnostic procedures failed to demonstrate a diagnosable condition that would interfere with Carlock's activities in any manner.

Dr. Calloway was deposed on December 15, 1987, in a related workers' compensation proceeding, and a copy of the deposition is included in the record. Dr. Calloway acknowledged that all diagnostic tests have been normal. Nevertheless, Dr. Calloway stated he was certain Carlock suffered from a ruptured disc.

After reviewing the testimony and evidence, the ALJ concluded that Carlock met his burden of establishing an inability to perform his former heavy work due to his back injury. However, the ALJ found that despite Carlock's back injury, Carlock retained the residual functional capacity to perform light work. The ALJ then considered Carlock's subjective complaints of disabling pain and determined that any pain suffered by Carlock would not affect his capacity to perform the full range of

light work.[2]

The ALJ then acknowledged that the burden of proof shifted to the Secretary to prove jobs existed in the national economy which Carlock was capable of performing. Since the ALJ determined that Carlock's nonexertional impairment (pain) did not prevent Carlock from performing the full range of light work, the ALJ relied on the Medical–Vocational Guidelines (the Guidelines) in directing a determination of "not disabled" without resort to vocational expert testimony or other similar evidence to establish Carlock's ability to perform work in the national economy.[3] The appeals council denied Carlock's request for review. The district court granted the Secretary's motion for summary judgment on April 24, 1989, thus affirming the denial of benefits.

## II. Discussion

Our review of the Secretary's decision is limited to a determination of whether it is supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Bolton v. Bowen*, 814 F.2d 536, 537 (8th Cir.1987).

■ Carlock's argument on appeal is essentially twofold. Carlock maintains that the ALJ improperly discredited his subjective complaints of disabling pain in finding that such pain would not affect Carlock's ability to perform the full range of light work. As a result, Carlock argues, the ALJ erred in relying upon the Guidelines to fulfill the Secretary's burden of proof regarding Carlock's ability to perform work in the national economy. Carlock contends

that vocational expert testimony was needed to satisfy this burden.

■ Use of the Guidelines is appropriate if the ALJ explicitly discredits subjective complaints of pain for a legally sufficient reason. *Hutsell v. Sullivan*, 892 F.2d 747, 750 (8th Cir.1989); *Bolton v. Bowen*, 814 F.2d at 538. It is well established that a sufficient basis exists to discount subjective complaints of pain where the complaints are inconsistent with the record as a whole. *Hutsell*, 892 F.2d at 750.

Although Carlock alleged disabling pain, the ALJ found his complaints were not fully credible, stating "that the pain and discomfort suffered by the claimant, although significant, would not preclude the performance of a light level of work which involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." The ALJ articulated the inconsistencies upon which he relied in reaching his credibility determination. The ALJ emphasized Carlock's daily activities, noting that Carlock took care of his personal needs, read, drove, and visited with relatives.[4] The ALJ emphasized Carlock's daily walking program and school attendance. The ALJ further found that while Carlock suffered from a lumbosacral strain, the medical evidence did not document the existence of a condition which reasonably could be expected to cause a disabling level of pain.

We conclude that the ALJ's credibility determination is supported by substantial evidence on the record as a whole. Be-

---

**2.** 20 C.F.R. § 404.1567(b) provides:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

**3.** The ALJ applied Rules 202.20 and 202.21 of the Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, to determine that Carlock was not under a disability as defined by the Social Security Act (the Act).

**4.** In his Activities of Daily Living form dated April 4, 1987, Carlock indicated he read one to two hours daily and drove himself around town daily. In a November 21, 1986 Workers' Compensation/Public Disability Benefit Questionnaire, Carlock stated that he drove himself to visit nearby relatives three to five times per week for one to three hours each visit.

cause the ALJ committed no error in concluding that Carlock's nonexertional impairment (pain) did not preclude him from engaging in the full range of light work, application of the Guidelines was appropriate.

Accordingly, we affirm the judgment of the district court.