James F. MITCHELL, Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health & Human Services, Appellee.

No. 90–1990SI.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 7, 1991.

Decided Feb. 5, 1991.

---

John A. Bowman, Davenport, Iowa, for appellant.

Robert C. Dopf, Des Moines, Iowa, for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

James Mitchell appeals the district court's order affirming the denial of his application for disability insurance benefits.[1] We reverse because the Administrative Law Judge's decision was not supported by substantial evidence found in the record as a whole.

## I. BACKGROUND

The evidence reveals that Mitchell was born in August 1935 and has graduated from high school. He worked as a quality assurance inspector for the Atomic Energy Commission from 1960 to 1978, at which time he began working as a driver for a beer distributor. He quit this work in February 1987 on the advice of doctors because he was suffering from acute angina and severe artery disease. He has undergone at least two coronary angioplasties but is not likely to undergo another, nor is he currently a candidate for a heart bypass operation. He does, however, depend upon

---

1. Mitchell had previously filed for benefits on March 27, 1987, seeking benefits beginning February 27, 1987. The application was denied on April 17, 1987, and Mitchell did not appeal. The instant application, filed April 4, 1988, also sought benefits as of February 27, 1987, but the ALJ determined that the proceedings associated with Mitchell's first application were res judicata as to benefits prior to April 17, 1987 and that reopening the first case was inappropriate. The ALJ's decision in this regard is not before us on appeal.

medication to keep his arteries expanded; specifically, Mitchell testified that he takes Lopressor twice a day, Isordil and Procardia four times a day, and Nitroglycerin during times of mental or physical stress and whenever he suffers angina attacks.

Also included in the evidence were letters from doctors, two of whom discussed Mitchell's ability to withstand stress. Doctor Schrock indicated that Mitchell was unable to do "any gainful occupation" because of recurring angina brought about by exertion. R. at 253. Doctor Kioschos opined that Mitchell was "permanently disabled for any job which requires physical or mental stress." R. at 255.

The ALJ discounted much of Mitchell's testimony regarding the side-effects of medication, his ability to endure stress, and the frequency of his angina attacks. Nonetheless, the ALJ did determine that Mitchell met his burden on the first four steps of the five-step sequential process. R. at 18. At that time, he posed a hypothetical to the vocational expert in which he described Mitchell's ability to withstand stress as "5 on a scale of 1 to 10, with 10 as the greatest degree of severity and 1 the least." R. at 67.[2] The vocational expert testified that Mitchell's residual functional capacity enabled him to perform jobs available in the national economy. In rendering her opinion, the vocational expert "assumed" that the stress associated with the jobs she identified was "between a 4 and a 5" on the ALJ's scale. R. at 70. Based on the testimony of the vocational expert, the ALJ determined that Mitchell was not disabled because there were jobs he could perform. The Appeals Council denied review and the ALJ's decision became that of the Secretary.

## II. DISCUSSION

■ Our review of disability determinations is confined to ascertaining whether the Secretary's decision is supported by substantial evidence found in the entire record. *Sobania v. Secretary of Health &*

*Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). "This review implicates more than a mere search for evidence supporting the Secretary's decision; a reviewing court must also take into account evidence which detracts from the Secretary's determination and apply a balancing test to weigh evidence which is contradictory." *Id.* (citations omitted).

### A. Mitchell's Medication

■ The ALJ's findings regarding the frequency with which Mitchell took his medication, as well as the effects of that medication, are not supported by the evidence in the entire record. The ALJ discounted Mitchell's testimony because Mitchell allegedly gave a different account to Doctor Kioschos. R. at 16. However, Doctor Kioschos merely indicated that Mitchell experiences chest pains once or twice a week and that he takes Nitroglycerin on these occasions. R. at 226. This does not mean that Mitchell took Nitroglycerin on *only* these occasions. Mitchell explained that he also took Nitroglycerin as a preventative measure before engaging in strenuous or stressful activity, R. at 54, 56, which course of action was suggested by Doctor Payvandi. R. at 199, 210. Consequently, nothing—including Doctor Kioschos' report—supports the ALJ's finding that Mitchell took his medicine less frequently than he stated.

More importantly, Mitchell testified that he took Procardia four times a day and that he occasionally suffered side effects from this drug. R. at 60. This information should have been accepted as true by the ALJ because no evidence fairly denied the truth of Mitchell's testimony and, consequently, it should have been included in the hypothetical posed to the vocational expert. *See Sobania*, 879 F.2d at 445.

### B. Mitchell's Ability to Endure Stress

The ALJ's classification of Mitchell's ability to be exposed to stress as "moderate" and as "level '5' on a scale of '1–10'" is not fairly supported by the evidence found on the record as a whole.

**2.** The ALJ properly refused to rely upon the Guidelines because he found that Mitchell's inability to endure stress constituted a nonexertional impairment that diminished his residual functional capacity. *See Thompson v. Bowen,* 850 F.2d 346, 349–50 (8th Cir.1988).

The ALJ specifically determined that Doctor Kioschos' opinion was entitled to greater weight than Doctor Schrock's opinion, R. at 17, and we accept the ALJ's determination that Doctor Kioschos' opinion was sounder and more credible. However, Doctor Kioschos did not indicate that Mitchell has a moderate ability to endure stress; he specifically indicated that Mitchell could not perform any job that requires physical or mental stress. No doctor's report contradicted Doctor Kioschos' opinion, and no doctor's report indicated that Mitchell could withstand moderate levels of stress.

### C. The Appropriate Remedy

The ALJ's failure to include information about the side effects of Procardia in the hypothetical would, at a minimum, cause this case to be remanded so that a proper hypothetical could be posed. However, the vocational expert testified that the jobs she identified had a near-moderate (by the ALJ's definition) degree of stress associated with them. Based on the evidence from Doctor Kioschos, there is not substantial evidence to support the ALJ's conclusion that Mitchell could perform these jobs. In fact, because of the vocational expert's testimony regarding the stress level associated with these jobs, the substantial weight of the evidence indicates that Mitchell could not perform them. Consequently, a remand for further findings is unnecessary; the case is remanded to the district court with directions to remand to the Secretary for computation and award of benefits. *See, e.g., Beeler v. Bowen,* 833 F.2d 124, 128 (8th Cir.1987).

### III. CONCLUSION

The ALJ's determination was not supported by the substantial weight of the evidence found in the record as a whole. The case is remanded for computation and award of benefits because further findings of fact are unnecessary.