936 F.2d 582
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Teddy C. COFFEE, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 90-5190.
 United States Court of Appeals, Tenth Circuit.
 June 27, 1991.
 
 Before STEPHEN H. ANDERSON, BARRETT and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Claimant Teddy C. Coffee appeals from an order of the district court affirming the Secretary's decision denying his application for disability benefits under the Social Security Act. We affirm.
 
 Background
 
 3
 Mr. Coffee submitted an application for disability benefits on January 15, 1987, alleging an onset date of December 15, 1986. This application was subsequently denied and Mr. Coffee requested a hearing. On February 26, 1988, an administrative law judge (ALJ) issued a decision ruling Mr. Coffee was not disabled. On reconsideration, the Appeals Council remanded the case for further proceedings. A second hearing ensued, after which the ALJ affirmed his initial determination. This decision was adopted as the final decision of the Secretary. On appeal, the district court upheld the ruling.
 
 
 4
 Mr. Coffee was born on February 29, 1936. He has a high school education. From December 1959 through December 1986, he worked in various capacities for Phillips Petroleum Company. Most recently, he was a trucking and shop supervisor. This position involved supervising thirty-two employees and being on-call seven days per week. In this capacity, Mr. Coffee was responsible for crude oil deliveries to pipeline stations.
 
 
 5
 Mr. Coffee's physical problems include heart disease, hypertension, diabetes, lung damage, and angina pectoris.[1] The record reveals he has undergone coronary artery bypass surgery twice. The first operation was performed in August 1983. A second surgery was performed approximately three years later. In addition, Mr. Coffee is an insulin dependent diabetic and is overweight.
 
 
 6
 The record contains reports from Mr. Coffee's three main treating physicians. On March 29, 1987, Dr. Laxmichand Kamani submitted a report to a disability insurer indicating that although Mr. Coffee was disabled for his regular occupation, he was not disabled for all occupations. Rec.Vol. I doc. 3 at 266. Dr. Kamani stated Mr. Coffee could not lift more than fifteen to twenty pounds, and "prolonged standing and walking long distances without breaks [was] not recommended." Id. He indicated that job-related stress had worsened Mr. Coffee's symptoms. Id. at 265. The report noted, however, that Mr. Coffee was a good candidate for rehabilitative services.
 
 
 7
 Following a doctor's visit in June 1987, Dr. Kamani noted that Mr. Coffee was doing "extremely well". At that time he had no angina and was "feeling very good". Rec.Vol. I doc. 3 at 261. Two months later, however, Dr. Kamani signed a very short letter directed "to whom it may concern", stating that Mr. Coffee was disabled. The letter does not reference any additional medical reports or information. Of all the physicians involved in Mr. Coffee's treatment, Dr. Kamani is the most long-standing.
 
 
 8
 In May 1987, Dr. Ronald Fortner submitted a report to the same insurer indicating that at that time, Mr. Coffee was totally disabled. Rec.Vol. I doc. 3 at 268. He identified a severe limitation of functional capacity and stated Mr. Coffee's "primary stress is having enough income to survive on." Id. at 267. Dr. Fortner first saw Mr. Coffee in December 1986 and, according to the medical reports in the record, saw him three more times, with the last examination occurring in March 1987. There are no reports in the record from Dr. Fortner after that time.
 
 
 9
 Dr. Stan DeFehr submitted responses to interrogatories in December 1987 which discussed Mr. Coffee's coronary artery disease. Rec.Vol. I doc. 3 at 291. The interrogatory answers stated Mr. Coffee could lift or carry twenty pounds on a frequent basis and could sit a total of six hours in an eight hour workday. In addition, Dr. DeFehr performed a treadmill test in September of 1987 which indicated Mr. Coffee had good exercise capacity. No angina was present, and Mr. Coffee was able to complete Step IV of the test. Rec.Vol. I doc. 3 at 279.
 
 
 10
 Dr. Eduardo Coligado examined Mr. Coffee for the agency in March 1987. After taking an extensive patient history, Dr. Coligado diagnosed hypertensive cardiovascular disease, type II diabetes mellitus, and obesity. He did not comment on Mr. Coffee's ability to hold a job nor did he give his impressions of claimant's ability to deal with stress. Rec.Vol. I doc. 3 at 231-32.
 
 
 11
 Finally, psychologist Diane Williamson evaluated Mr. Coffee on September 21, 1988. She administered both the Minnesota Multiphasic Personality Inventory and the Millon Behavioral Health Inventory. She identified Mr. Coffee as an "acutely distressed man who is psychologically unable to cope with the stresses of daily living." Rec.Vol. I doc. 3 at 333. Dr. Williamson concluded he was not capable of coping with the demands of employment otherwise within his physical capabilities due to his reaction to stress. Id.
 
 
 12
 On appeal, Mr. Coffee argues substantial evidence does not support the Secretary's decision to deny benefits because the ALJ failed to consider his nonexertional stress impairment and inappropriately rejected the opinions of his treating physicians.
 
 Discussion
 
 13
 This court's review is limited to determining whether the Secretary's findings are supported by substantial evidence and whether correct legal standards were applied. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). Substantial evidence "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the Secretary." Pacheco v. Sullivan, 931 F.2d 695, 697 (10th Cir.1991). In determining whether substantial evidence supports the Secretary's decision in this case, we have examined the entire record. See Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988).
 
 
 14
 Mr. Coffee's main argument on appeal is that the ALJ ignored opinions from his treating physicians concluding that he is disabled. See Sorenson v. Bowen, 888 F.2d 706, 711 (10th Cir.1989) (Secretary must give substantial weight to the opinion of the treating physician unless good cause is shown for rejecting it.); Williams, 844 F.2d at 758 (treating physician's opinion may be disregarded only if specific, legitimate reasons are given). Because we hold the ALJ did not ignore or otherwise inappropriately reject these opinions, we decline to adopt this argument.
 
 
 15
 The ALJ's decision states he was "mindful of the opinions of Drs. Kamani, Fortner, and DeFehr...." Rec.Vol. I doc. 3 at 12. As the Secretary notes, the opinions of these physicians are inconsistent. While Dr. Kamani stated in one brief letter that Mr. Coffee was disabled, the vast majority of his medical reports indicate Mr. Coffee could perform sedentary work.[2] Dr. DeFehr's report indicated Mr. Coffee had no angina after significant physical exertion and did very well in the treadmill test.
 
 
 16
 In addition, although Mr. Coffee reported continued chest pains into 1988, his physicians determined they were esphageal rather than the result of angina. The ALJ noted all of these findings in his decision. The record simply does not support the conclusion that all the treating physicians determined Mr. Coffee was disabled. Furthermore, even to the extent one could interpret the record to support Mr. Coffee's argument that his treating physicians determined he was totally disabled, the ALJ cited specific reasons, based on the medical record, for rejecting these conclusions.
 
 
 17
 Mr. Coffee also asserts that the ALJ failed to consider his nonexertional stress impairment in determining he was not disabled. "Claimants with heart disease may be effectively disabled by the effect of stress." Clark v. Bowen, 668 F.Supp. 1357, 1360 (N.D.Cal.1987); see also Mitchell v. Sullivan, 925 F.2d 247, 249-50 (8th Cir.1991) (ALJ's determination that heart patient could perform in job with moderate stress was not supported by substantial evidence); Schmidt v. Sullivan, 914 F.2d 117, 119 (7th Cir.1990) ("The award of benefits to a person disabled because the emotional stress of working would exacerbate his heart condition would not even be novel.") (citing Stewart v. Heckler, 730 F.2d 1065 (6th Cir.1984)).
 
 
 18
 In such a case, however, "the dangers of work-related stress to the claimant's health must be documented by his treating physicians or at least supported in some meaningful way by the claimant's own testimony." Clark, 668 F.Supp. at 1360. A claimant is not disabled if he is capable of working in a less stressful position than that which he held previously. See Schmidt, 914 F.2d at 119.
 
 
 19
 Here, the ALJ determined that although Mr. Coffee could not return to his previous employment, he was capable of performing less stressful, sedentary, jobs.[3] In this regard, the ALJ relied on the testimony of vocational expert Teresa Manning, who stated that Mr. Coffee had transferable skills which could be applied in less stressful sedentary positions such as receiving clerk, shipping clerk, or trucking dispatcher. Rec.Vol. I doc. 3 at 78. She testified these jobs were available in sufficient numbers in the Oklahoma area.[4] Id. at 81.
 
 
 20
 Substantial evidence supports the ALJ's conclusion that the combination of Mr. Coffee's impairments do not render him disabled to perform a low stress job. Apart from Dr. Williamson's opinion, which was based on one meeting and two tests, there is no physician commentary in the record regarding Mr. Coffee's ability to perform in a low stress position in light of his impairments. We agree with the ALJ that the medical evidence does not support a finding of disability.[5]
 
 
 21
 For all these reasons, the decision of the Secretary as upheld by the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Angina pectoris is defined as "severe constricting pain in the chest ... due to ischemia of the heart muscle usually caused by coronary disease." Stedman's Medical Dictionary 79 (25th ed. 1990)
 
 
 [2]
 Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met
 
 
 [20]
 C.F.R. Secs. 404.1567(a), 416.967(a) (1990)
 
 
 [3]
 Thus, the ALJ made his decision at the fifth step of the sequential evaluation outlined in the regulations accompanying the Social Security Act for use in making disability determinations. See Sorenson, 888 F.2d at 710 (outlining five-step procedure)
 
 
 [4]
 This court has stated that "when a claimant suffers from both exertional and nonexertional limitations, and the exertional limitations in and of themselves do not establish disability, the [Medical-Vocational Guidelines] provide no more than a framework for determining disability". Williams, 844 F.2d at 752. In this case, it was incumbent upon the ALJ to consider the impact of Mr. Coffee's nonexertional limitations in determining whether he could perform sedentary work. See id
 
 
 [5]
 Contrary to claimant's assertions, it is not "uncontroverted" that Mr. Coffee is unable to engage in any interpersonal relations and is "incapable of social functioning." See Appellant's Brief at 17-18. Mr. Coffee admits he socializes on a regular basis and there is no medical evidence in the record that he is unable to function socially