Shannon RUSSELL, Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Appellee.

No. 91–1459.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 5, 1991.

Decided Dec. 2, 1991.

Shannon Russell, pro se.

Joseph B. Moore, St. Louis, Mo., argued (Janet Braggs, Kansas City, Mo., on the brief), for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Shannon Russell appeals an order of the district court [1] affirming the decision of the Secretary of Health and Human Services to deny his application for Social Security disability and supplemental security income (SSI) benefits because he is not disabled within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423 and 1381a. Because substantial evidence on the record as a whole supports the Secretary's decision, we affirm.

### I.

Russell is 51 years old and is currently enrolled in college after working over twenty years as a farmer, foundry worker and industrial painter. Russell applied for Social Security disability benefits on January 25, 1985, alleging that he was disabled by back injuries sustained when he fell twenty feet from a scaffold on July 3, 1984. While his disability claim was pending, Russell applied for SSI benefits on December 23, 1985, after which the two claims were considered together.[2] Following a hearing on July 30, 1986, an administrative law judge denied both claims, but the Appeals Council remanded for a determination of the severity of Russell's mental impairments.

On remand, Russell underwent a psychological consultative examination, as directed by the Appeals Council, and an additional hearing was held. The ALJ issued his decision on June 13, 1988, finding that Russell has a combination of impairments—

---

1. The HONORABLE STEPHEN N. LIMBAUGH, United States District Judge for the Eastern District of Missouri. Judge Limbaugh's order adopts the Report and Recommendations of The Hon. David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

2. Though there are some different threshhold eligibility requirements for disability and SSI benefits, the analysis for determining disability is identical under both programs. *See* 20 C.F.R. §§ 404.1520 (disability) and 416.920 (SSI).

back injury and depression—that render him unable to perform his past work; that he nonetheless retains the residual functional capacity to perform the full range of sedentary work; that his complaints of totally disabling pain are not credible; and that the Secretary had met his burden of proving that Russell is not disabled under the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.21. Russell sought further administrative review, but the Appeals Council declined his request, leaving the ALJ's opinion as the Secretary's final decision.

Russell then commenced this action pursuant to 42 U.S.C. § 405(g). The Magistrate Judge issued an extensive Report, reviewing the administrative record and recommending that the Secretary's motion for summary judgment be granted. The district court adopted that recommendation, 758 F.Supp. 490 and Russell appeals.

## II.

■ We must affirm if substantial evidence on the record as a whole supports the Secretary's decision. This inquiry requires us to give appropriate weight to evidence contrary to the ALJ's findings. *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir.1991). However, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989). After careful review of the extensive administrative record, we conclude that substantial evidence supports the Secretary's decision.

■ In making the required disability analysis, the ALJ first found that Russell's physical impairments prevent him from performing his past heavy work, based upon the reports of treating physicians that Russell has limited ability to lift, bend and stoop. This finding shifts the burden to the Secretary to prove that Russell nonetheless has the "residual functional capacity" to perform other available work in the national economy. *See Hutsell v. Sullivan*, 892 F.2d 747, 749–50 (8th Cir.1989).

■ The ALJ next determined that Russell's physical impairments do not prevent him from performing the full range of sedentary work, as defined in the Secretary's regulations. Although Russell challenges this determination, the medical evidence overwhelmingly supports it. Except for one consulting physician who saw Russell once and opined that he was "temporarily" disabled, all of Russell's doctors agreed that his physical impairments do not preclude him from performing sedentary jobs. Numerous medical reports and test results in the record support this conclusion. As the Magistrate Judge summarized this medical evidence:

[Russell's] treating physicians have consistently reported that [his physical impairment] imposes some limitations, but it does not preclude lighter work. The objective medical evidence of exertional impairment required by the Social Security Disability Benefits Reform Act of 1984 ... is simply lacking.

Thus, the administrative record fully supports the ALJ's finding that Russell is physically capable of doing sedentary work.

■ Because disability can be caused by mental as well as physical impairments, *see* 20 C.F.R. § 404.1505, the ALJ next considered whether Russell has a mental impairment that prevents him from performing sedentary jobs in the national economy. Mental impairments are analyzed under a detailed "special procedure" set forth in the regulations. *See* 20 C.F.R. §§ 404.-1520a and 416.920a. First, the ALJ must make clinical findings, called "paragraph A criteria," as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00 A. Then, the ALJ must measure the severity of any mental disorder, that is, its impact on the applicant's ability to work. This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders, called "paragraph B criteria." *Ibid.*

In this case, in the paragraph A analysis, the ALJ found the presence of a medically documented "affective disorder," *id.* at § 12.04, but no other mental disorder. Turning to the paragraph B analysis, the ALJ found that Russell's affective disorder caused a slight restriction in his daily activities and a slight difficulty in social functioning, but no other functional limitation. Based upon these findings, the ALJ concluded that this mental impairment is not "severe," that is, it does not "significantly limit [Russell's] physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520a(c)(1), 404.1521(a). There is ample evidence in the record to support these findings. Moreover, the ALJ's analysis of the mental impairment question was consistent with the regulations' special procedure. Therefore, we must accept his conclusion that Russell does not have a mental impairment which, in combination with his physical impairments, renders him unable to perform sedentary work. *Cf. Burns v. Sullivan*, 888 F.2d 1218, 1219 (8th Cir. 1989).

Finally, Russell argues that the ALJ failed to give proper weight to his testimony that he suffers from disabling pain. Under our decision in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984), an ALJ must address this issue by looking at five factors: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. The question is not whether Russell feels any pain—undoubtedly, he does—but rather whether to credit fully his claim that his back hurts so much he cannot perform sedentary work. *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir.1987).

An ALJ must seriously consider a claimant's subjective testimony about pain. However, "[i]f an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment." *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir.1990). In this case, the medical evidence was inconsistent with Russell's complaints of disabling pain, and the ALJ gave detailed reasons why he found Russell's testimony about pain not credible:

> There are inconsistencies which detract from his credibility. At the hearing, he testified that he can only walk one-eighth of a mile but, in physical therapy, he was able to walk one mile. He indicated that he has difficulty climbing stairs but, with physical therapy, he was able to climb stairs for ten minutes. Despite his complaints of pain, at physical therapy he tolerated exercises quite well. After the initial injury, the claimant did not rest, but campaigned for public office. Dr. Hertel advised the claimant to discard his brace, but found that the claimant was wearing it around the clock. The claimant reported, to a pain clinic doctor, that his pain was minimal when he was moving, and that he had little trouble standing for any length of time. At the hearing, he testified that sitting was very painful, but that he sits through his classes. He sat at the hearing without significant discomfort. He would not bend for Dr. Miller, but the doctor observed a full bend while he was seated. Sensory examinations have been inconsistent.... When he was hospitalized, in October 1984, it was noted that his back pain was mild. On discharge, he had minimal back discomfort. His reports to the physical therapist were inconsistent. At times, he indicated that the TENS unit helped and, at other times, he said it did not. He told the doctors that the intercostal block had been, at least temporarily, effective, but told the physical therapist that it had not helped. Testing showed a pain exaggeration profile. These factors show that the claimant's allegations of symtoms, which preclude the performance of the full range of sedentary work, are not credible.

On a record replete with medical evidence contrary to Russell's testimony about pain, we must accept the ALJ's credibility determination. *See Carlock v. Sullivan*, 902 F.2d 1341, 1343 (8th Cir.1990).

Having rejected Russell's subjective testimony that pain prevents him from engaging in the full range of sedentary work, the ALJ properly determined whether the Secretary had met his burden by use of the "grid," the Medical–Vocational Guidelines contained in the regulations, without vocational expert testimony. *See Hutsell v. Sullivan*, 892 F.2d 747 (8th Cir.1989). Considering Russell's age, education, work experience, and capacity for a full range of sedentary work, the ALJ concluded that Rule 201.21 of the Guidelines directs a finding that he is not disabled. 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 201.21. The record supports this application of the grid. Accordingly, we must affirm.

HEANEY, Senior Circuit Judge, dissenting.

I respectfully dissent. Substantial evidence in the record belies the ALJ's conclusion that Russell's mental impairment has no effect on his ability to perform the full range of sedentary work.

The ALJ conceded that Russell suffers from depression, but nonetheless used the "grid" to satisfy the Secretary's burden of demonstrating the existence of jobs in the national economy which Russell could perform. When a nonexertional impairment such as depression exists, the grid may be used only "if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." *Thompson v. Bowen*, 850 F.2d 346, 349–50 (8th Cir.1988) (footnote omitted). Conversely, if a nonexertional impairment diminishes the claimant's ability to perform the full range of activities contemplated by the grid, the Secretary can meet his burden only by producing vocational expert testimony or other similar evidence to establish the existence of jobs in the national economy for a person with the claimant's characteristics. *Buck v. Bowen*, 885 F.2d 451, 454 (8th Cir.1989).

In this case, the record contradicts the ALJ's finding that Russell's nonexertional impairment does not diminish his capacity to perform the full range of sedentary work. Undisputed medical evidence in the record establishes that Russell's psychological symptoms include an inability to deal with work stresses. Dr. James L. Becker, a psychologist who examined Russell for the Social Security Administration, completed a form entitled "Medical Assessment of Ability to do Work–Related Activities (Mental)" as part of his report. In assessing Russell's ability to make occupational adjustments, Dr. Becker rated Russell's capacity to deal with work stresses as "poor or none," which the form defines as "no useful ability to function in this area." Dr. Becker also concluded that Russell's ability to function independently in a job was poor or none.[1]

One year earlier, Dr. Farida Farzana had performed a psychiatric evaluation of Russell and reached conclusions consistent with Dr. Becker's. Dr. Farzana concluded that Russell's ability to relate to fellow workers and supervisors was poor and that his ability to follow simple instructions was doubtful. Dr. Farzana also concluded that Russell's impairments diminished his ability to concentrate and to withstand the stress and pressure associated with day to day work activities.

Dr. Farzana's findings persuaded the Appeals Council to remand Russell's case for a consultative psychological examination and an assessment of Russell's abilities to make occupational, personal, and social adjustments. Dr. Becker's report is the result of the ensuing consultative examination. The ALJ did not explicitly discredit Drs. Becker and Farzana's conclusions; he instead relied on them as indicative of "no significant psychiatric problem." This finding discounts uncontroverted evidence and ignores Dr. Becker's express conclusion that Russell had no useful ability to deal with work stress.

---

1. Dr. Becker rated Russell's abilities to deal with the public, use judgment, interact with supervisors, and maintain attention or concentration as "fair," about which the form explains: "ability to function in this area is seriously limited but not precluded."

The ALJ also relied on Russell's own testimony that his depression was "not that bad" to conclude that it had no effect on his ability to work. The ALJ did not indicate why this portion of Russell's testimony was more credible than his allegations of pain, which the ALJ discredited. The record demonstrates Russell's history of denying he had any psychological problems at all and refusing psychiatric treatment whenever it was recommended. Both his treating physicians and the consulting psychologists agreed, however, that Russell showed symptoms of mental impairment. With respect to Russell's ability to withstand stress, the transcript of his second administrative hearing reveals that Russell burst into tears during questioning by the ALJ, necessitating a recess. When asked by his attorney whether he had had such crying spells before, Russell replied that it was "one of the first ones," that he had come close to crying before, and that he tried to refrain from doing it.

An inability to endure stress constitutes a nonexertional impairment which diminishes a claimant's residual functional capacity and precludes resort to the grid. *Mitchell v. Sullivan,* 925 F.2d 247, 249 n. 2 (8th Cir.1991); *Marshall v. Bowen,* 871 F.2d 68, 70 (8th Cir.1989). The record amply supports a finding that Russell's poor tolerance of stress prevents him from performing the full range of sedentary work, particularly when his past relevant work has equipped him with no skills which are transferable to sedentary work. The ALJ should have called a vocational expert to supplement the grid with a realistic appraisal of available work that can be performed by someone with Russell's precise limitations. *See Forsythe v. Sullivan,* 926 F.2d 774, 776 (8th Cir.1991); *Marshall,* 871 F.2d at 70.

Even under the grid, Russell's status as disabled or not disabled was borderline. At the time of his third hearing, Russell was 48, making him a "younger individual." 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(h) (1991). A younger individual aged 45 to 49 with an education of high school or more and previous skilled or semi-skilled work experience whose skills are not transferable to sedentary work is "not disabled" under Rule 201.21. *Id.* at Table No. 1. An individual aged 50 to 54, however, is considered closely "approaching advanced age." *Id.,* § 201.00(g). An individual aged 50 to 54 with the previously listed characteristics is disabled under Rule 201.-14. *Id.* at Table No. 1. Russell is currently 51 years old. Thus, even if Russell was not disabled within the meaning of the Social Security Act before June 30, 1985, when he last met the earnings requirements for disability insurance benefits, he became disabled under the grid for purposes of SSI when he turned 50. *See* 20 C.F.R. § 416.969 (1991) (grid for disability insurance benefits eligibility is also used to determine eligibility for SSI).

For these reasons, I would reverse the decision of the district court and remand this case with instructions to remand Russell's application for disability insurance benefits to the Secretary for a rehearing to include testimony by a vocational expert. On Russell's application for SSI, I would instruct the Secretary to award benefits as of March 1, 1990, Russell's fiftieth birthday.