27 F.3d 572
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
Jonathan KRAMER, Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services, Appellee.
 No. 93-3676.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: June 14, 1994.
Filed: July 5, 1994.
 
 Before McMILLIAN, MAGILL and BEAM, Circuit Judges.
 PER CURIAM.
 
 
 1
 Jonathan Kramer appeals from the final order entered in the District Court[1] for the District of Minnesota, affirming the decision of the Secretary of Health and Human Services to deny Kramer's application for disability insurance benefits and supplemental security income. For the reasons discussed below, we affirm.
 
 
 2
 Kramer was born August 17, 1952; completed high school and attended some college and technical school; and worked as a sheet metal worker, janitor, farmhand, shipping clerk, and logger. He filed an application for benefits in October 1989, complaining of a bad back resulting from a herniated lumbar disc, and memory problems stemming from a head injury suffered in a motorcycle accident in 1988. His application was denied initially and upon reconsideration. At Kramer's request, an Administrative Law Judge (ALJ) conducted a hearing.
 
 
 3
 The medical evidence showed that in October 1979, Kramer experienced low back pain and underwent a laminectomy, disc excision, and interbody fusion at the L-5, S-1 level. In July 1988, Kramer was in a motorcycle accident; he sustained a closed head injury and multiple facial lacerations requiring surgery, and later Kramer complained of double vision and memory loss. A magnetic resonance imaging (MRI) of his brain showed no abnormality. In July 1989, Kramer underwent a right L4-5 partial hemilaminectomy and medial facetectomy with removal of the disc and ligament. Following this second back surgery, Kramer complained of numbness in his lower extremities, incontinence, and lack of coordination in his legs. Kramer underwent physical therapy for approximately one month in October 1989. A consultative neurosurgeon found very mild central scarring on the myelograms and no compression of any neural structures on the CT scan; he could not explain Kramer's complaint of incoordination; and he recommended physical therapy. Kramer's treating doctor agreed there was nothing further to do surgically.
 
 
 4
 A social worker, who met with Kramer five times to discuss his depression, prepared a mental residual functional capacity assessment. He concluded that Kramer was markedly limited in his ability to carry out detailed instructions and to interact appropriately with the general public, and moderately limited in several aspects of his abilities relating to his understanding and memory, sustained concentration and persistence, social interaction, and adaptation. The social worker also filled out a Rating of Impairment Severity form, similar to that required by social security regulations to show a mental impairment under the listings, see, e.g., 20 C.F.R. Pt. 404, Subpt. P., App. 1, Sec. 12.04(B), concluding Kramer had no restriction of activities of daily living, a slight difficulty in maintaining social functions, and one or two episodes of deterioration or decompensation in work settings, but noting he had insufficient evidence to determine Kramer's deficiencies of concentration, persistence, or pace.
 
 
 5
 A rehabilitation counselor found Kramer's aptitude for hand- eye, finger, and manual dexterity was more than minus one standard deviation below the mean, and his memory was impaired. The counselor, however, believed that with counseling and training Kramer was employable. A September 1989 psychological evaluation indicated Kramer scored a verbal IQ of 120, performance score of 100, and a full scale IQ of 112 on the WAIS-R. The licensed psychologist opined that the twenty-point differential suggested psychoneurological deficits secondary to a severe and traumatic brain injury. Kramer's test scores revealed high average general intelligence, but his mild psychoneurological deficits affected memory processing. In August 1990, a neurocognitive assessment found Kramer performed within normal limits, and concluded that there was little evidence of residual cognitive deficits resulting from a closed head injury.
 
 
 6
 At the hearing, Kramer testified that he did not fully recover from his second back operation in 1989. Kramer stated he did not take medication for his pain because the only effective medication caused constipation. Kramer stated, however, that he could not perform his past work because of his physical limitations, not because of his pain. Kramer stated that he suffers from constant severe headaches, lack of memory, and lack of ability to concentrate. He was generally depressed about life. Kramer believed his incontinence problem was under control.
 
 
 7
 The vocational expert (VE) opined that Kramer had transferrable skills for light or sedentary work; specifically, there were light-duty driving occupations, light-duty inventory control jobs, and unskilled sedentary cashier, information clerk, security guard, and packaging and assembly work Kramer could perform. The ALJ then propounded two hypotheticals to the VE. The first hypothetical assumed Kramer's age, education, work experience, and exertional limitations listed in a functional capacity assessment, and granted full credibility to Kramer's testimony regarding pain, incontinence, lack of concentration and memory, and depression. The second hypothetical added Kramer's testimony that his functional capacity was limited by his inability to sit for more than two hours although he could stand comfortably; and his inability to lift continuously more than five pounds, to bend, and to have coordinated finger dexterity. The VE stated that under either hypothetical, Kramer could not perform his past relevant work, but that there were sufficient jobs in the sedentary and light work categories that Kramer could do.
 
 
 8
 On cross-examination, the VE stated that, assuming Kramer's aptitude for hand-eye, finger, and manual dexterity was one standard deviation below the mean, 60-70% of the available jobs would be eliminated. The VE stated that, assuming an added impairment of marked limitation in the ability to interact appropriately with the general public, Kramer would be unable to perform the cashiering, information clerk, and security guard positions. The VE also stated that someone with moderate limitations as set forth in the social worker's mental residual functional capacity assessment would not be able to perform substantial employment, and a person requiring an hour of rest during the day would not be capable of competitive employment.
 
 
 9
 The ALJ concluded Kramer possessed the residual functional capacity to do a wide range of sedentary work. The ALJ did not accept Kramer's claims as to the severity of limitations resulting from his impairments, based on inconsistencies in the record. The ALJ noted that Kramer's incontinence would not significantly interfere with work activities. The ALJ accorded greater weight to the social worker's rating on the impairment severity form than to the mental residual functional capacity assessment, because it more accurately reflected the results of various psychological and neurocognitive assessments. Although the social worker did not evaluate the degree to which Kramer could maintain persistence or pace, the ALJ concluded that other testing of record indicated only "some" or "mild" processing and concentration problems. The ALJ also noted that Kramer was not receiving ongoing treatment for depression. The ALJ concluded that Kramer could not engage in his past relevant work, and shifted the burden to the Secretary to prove there were other jobs he could perform. The ALJ concluded that the record did not support Kramer's claim that he needed an afternoon rest or that he had difficulty dealing with others, and stated he was persuaded that Kramer would be capable of meeting the physical and mental demands of the jobs isolated by the VE. The Appeals Council denied further review, and Kramer sought judicial review. The district court granted the Secretary summary judgment.
 
 
 10
 It is well-settled that this court must affirm if substantial evidence on the record as a whole supports the Secretary's decision. Russell v. Sullivan, 950 F.2d 542, 544 (8th Cir. 1991). Kramer does not contest the ALJ's findings that his back impairment limited him to sedentary work. For reversal, Kramer challenges the ALJ's assessment of the effect of his alleged mental impairments on his ability to work. The ALJ credited the evaluations of Kramer's functional capacity which found him to have "mild" or "some" deficiencies of concentration, processing problems, and organic personality syndrome over the single opinion of the social worker that such limitations were "marked" or "moderate." The ALJ's dismissal of medical evaluations must be supported by substantial evidence. Robertson v. Sullivan, 925 F.2d 1124, 1126 (8th Cir. 1991). Substantial evidence is such evidence " ' "as a reasonable mind might accept as adequate to support a conclusion." ' " Id. at 1127 (quoted cases omitted). We agree with the ALJ that the record supports neither the social worker's opinion that Kramer had marked limitations in his ability to interact with the general public, nor Kramer's asserted need for a daily afternoon rest. The remaining conflicts relate principally to the degree of impairment, and, except for the social worker's assessment, the record supports the ALJ's conclusions that Kramer had mild, rather than moderate, limitations as a result of his head injury. The consultative neurological, neurocognitive, psychiatric, and psychological examinations provide medical evidence to support the non-treating medical providers' conclusions, and they uniformly supported the ALJ's opinion that Kramer's impairments were mild. Because the ALJ reasonably resolved the conflicts in the evidence, substantial evidence in the record as a whole supports the Secretary's decision.
 
 
 11
 We reject Kramer's argument that the hypothetical failed to specifically describe his impairments. Although testimony elicited by the hypothetical that does not "relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision," Ekeland v. Bowen, 899 F.2d 719, 722 (8th Cir. 1990), the hypothetical need only include those impairments accepted by the ALJ as true. Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). We have already stated that the ALJ properly resolved the conflicting evidence. The VE considered Kramer's residual functional capacity as stated in specific exhibits in the record, which the VE reviewed at the hearing, and the VE's testimony on cross-examination further clarified the issues. Accordingly, we are satisfied that there was no confusion or uncertainty as to the assumptions the VE was called to make in responding to the hypothetical.
 
 
 12
 Accordingly, we affirm the judgment of the district court.
 
 
 
 [1]
 The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, adopting the report and recommendations of the Honorable Raymond L. Erickson, United States Magistrate Judge for the District of Minnesota