29 F.3d 628
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
Brenda MILLER, SS # otb-jm-xnlo Appellant,
v.
Donna E. SHALALA, Secretary of the Department of Health and
Human Services, Appellee.
 No. 93-3134.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: March 11, 1994.
Filed: July 27, 1994.
 
 Before McMILLIAN, MAGILL and BEAM, Circuit Judges.
 PER CURIAM.
 
 
 1
 Brenda Miller appeals from the district court's order, affirming the decision of the Secretary of Health and Human Services to deny Miller's application for supplemental security income under the Social Security Act, 42 U.S.C. Sec. 1381a. Miller v. Shalala, No. 92-241-CV-W-1 (W.D. Mo. July 14, 1993) (order). We affirm.
 
 
 2
 Miller was born December 15, 1961; completed the eighth grade; and last worked in 1981 for short periods as a nurse's aide, housekeeper, and waitress. She filed an application for benefits in April 1990, complaining of depression and arthritis. Her application was denied initially and upon reconsideration. At Miller's request, an Administrative Law Judge (ALJ) conducted a hearing, at which Miller was represented by counsel.
 
 
 3
 The documentary evidence in the record included a teenage hospitalization, in which Miller was diagnosed with runaway reaction of adolescence and mild depressive neurosis; a 1988 one-day hospital self-admission after she ingested alcohol and drugs and threw furniture out of her house; records from psychologists reporting borderline intellectual functioning based on her 84 I.Q. score, dysthymic disorder[1] or depressive neurosis, impaired general cognitive functioning and concentration skills, and inability to exercise good judgment when stress was involved; a psychiatric evaluation diagnosing characterological dysthymic disorder, alcohol abuse, and immature personality disorder; and outpatient clinic progress notes indicating Miller had occasional sleep problems and continued short-term episodes of depression.
 
 
 4
 At the hearing, Miller testified that "a lot of times I just don't feel right" and "I get in bad moods." She stated she was out of control once when she mixed alcohol and medicine, and she threw things; normally, she did not have a drug abuse problem, she took her prescription medication properly (Mellaril, Tofranil),[2] but she was depressed even while on the medication. Her depressed moods lasted from several hours to several days; she sometimes wished she would not wake up from her sleep. Miller testified that she failed the nurse's aide training course, and could no longer work as a housekeeper because she tired easily and would walk off the job if she became upset; she does not get along with people she does not know. She stated she could care for her personal needs.
 
 
 5
 A vocational expert testified that a person with Miller's exertional limitations could perform the full range of sedentary, light, and medium unskilled jobs; that a twenty-nine-year old, with depression with some developmental component, and with simple and unskilled work experience could not perform her past work as nurse's aide or waitress because they required greater skill levels and contact with the public; and that restricting jobs to simpler occupations with not more than four steps and to those without excessive stress would preclude housekeeping work. The vocational expert noted that significant numbers of unskilled jobs at the light and sedentary level required no more than four steps, e.g., electronics assembler, hand-packager, security monitor, and mold cast machine operator, but that restricting jobs presenting stressful situations, either because of close public or co-worker contacts, or by high production expectations would significantly eliminate most jobs from the job base. The vocational expert noted that Miller's psychological test results showed impaired attention and concentration (which would restrict the complexity of the tasks Miller could perform) and stress intolerance.
 
 
 6
 The ALJ concluded that Miller's depression-related symptoms showed that Miller suffered from depressive neurosis or dysthymic disorder, borderline intellectual functioning, and immature personality disorder. The ALJ noted a conflict between Miller's testimony of the severity of her conditions and the medical evidence, e.g., she alleged severe depression but her activities of daily living and her ability to maintain social functioning appeared only slightly restricted. The ALJ concluded that her depressive symptoms did not occur so often that she would miss large amounts of work because of them. The ALJ found that Miller was restricted to jobs of not more than four steps due to her limited intellect, to occupations not requiring frequent public or co-worker contact, and to positions with physical limitations at the medium exertional level. Because the vocational expert concluded that Miller was unable to perform her past relevant work, the burden shifted to the Secretary to establish what other work Miller could do. Based on the vocational expert's opinion that jobs existed that a person with Miller's conditions could perform, and because most employers allowed up to twelve days off per year, which would accommodate Miller's depressive symptoms, the ALJ concluded Miller was not disabled. The Appeals Council denied further review, and Miller sought judicial review. The district court concluded that the Secretary's decision was supported by substantial evidence.
 
 
 7
 "We must affirm if substantial evidence on the record as a whole supports the Secretary's decision." Russell v. Sullivan, 950 F.2d 542, 544 (8th Cir. 1991). Miller's contention she met the listings for personality disorders is without merit. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.08. The ALJ properly concluded that Miller did not satisfy the functional limitation aspect of the listings for affective disorders, see id. Sec. 12.04(B), because neither the medical evidence nor Miller's testimony suggested that she was restricted to the degree delineated in the listings. Because the functional limitations for personality disorders and affective disorders are the same, there is also substantial evidence to support that Miller did not meet the listings of impairments for personality disorders. See id. Sec. 12.08(B).
 
 
 8
 We disagree with Miller that the ALJ failed to properly evaluate Miller's subjective complaints. In evaluating a claimant's credibility, the ALJ is required to consider the claimant's daily activities; the duration, frequency, and intensity of the subjective complaint; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (pain) (subsequent history omitted). Upon our review of the record, we conclude that the ALJ adequately considered these factors.
 
 
 9
 As for the hypothetical question, "in order for the testimony of a vocational expert to qualify as substantial evidence, the hypothetical question posed to the expert must precisely describe the claimant's impairments." Whitmore v. Bowen, 785 F.2d 262, 263 (8th Cir. 1986). Miller argues that the ALJ failed to include in the hypothetical her deficiencies of concentration, persistence, and pace. The vocational expert, however, took such deficiencies into account when defining the complexity of the task Miller would be capable of performing, and confined the available jobs to those requiring under four steps. Thus, the hypothetical included all of claimant's impairments.
 
 
 10
 Accordingly, we affirm the judgment of the district court.JD
 
 
 11
 McMILLIAN, Circuit Judge, dissenting.
 
 
 12
 I respectfully dissent. I do not believe the hypothetical question constitutes substantial evidence. In my opinion, the record establishes that Miller's ability to work at the jobs suggested by the vocational expert is impaired by her stress intolerance. The following hypothetical was posed to the vocational expert:
 
 
 13
 Q: Now, if I find that the stress or ... stressful situations can cause symptomatology in the nature of depressed and mood to occur and that as, as has been alleged in other stress or in addition to close public or co-worker contacts would be having to work-perform work rapidly, that is, you know, where there's a high production expectation, what would be the effect of the intolerance of the stress of that sort on, on these occupations or the base generally that would exist? A: Again, ... we're going to significantly eliminate most job bases if we have all three criteria.
 
 
 14
 (Admin. Tr. at 66.)
 
 
 15
 The ALJ found that Miller could not return to her past work because of either the skill requirements, multiple steps required, or contact with the public. Slip op. at 6. The ALJ further concluded that, "including an impaired stress tolerance level," Miller could work as an electronic assembler, hand-packager, and other similar jobs. Id. In separately listed findings, the ALJ concluded that, "[c]laimant's residual functional capacity ... is slightly reduced by her impaired stress tolerance, and she is limited, either by this factor or deficient intellectual capacity, to occupations of no more than 2-4 steps and without frequent public or co-worker contacts." Id. at 7 (emphasis added). The vocational expert, however, opined that a person with an impaired stress tolerance level would not be able to perform jobs requiring a high production expectation, naming as an example a hand- packager. The vocational expert further observed that the presence of stress intolerance was supported by psychological testing but not by a vocational evaluation.
 
 
 16
 I do not believe there is support in the record for the ALJ's finding that Miller's impaired stress tolerance reduced her residual functional capacity only slightly. Because the vocational expert stated that intolerance for stress because of public contact or high production expectation would eliminate all jobs, and the record supports the presence of the three factors-human contact, productivity expectation, and stress-I believe the ALJ erred in finding available jobs Miller could perform and I do not believe the Secretary's decision is supported by substantial evidence.
 
 
 17
 As the vocational expert recognized, the presence of impaired stress tolerance in the record was supported by psychologists' tests and not by a vocational evaluation. Because it is the burden of the Secretary to properly develop the record, see Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993) (duty to develop record even with counsel if treated unfairly or can show prejudice), I would remand the case for a vocational evaluation.
 
 
 18
 Accordingly, I dissent.
 
 
 
 [1]
 Dysthymic disorder is defined by depressive symptoms which "typically begin insidiously in childhood or adolescence and pursue an intermittent or low-grade course over many years or decades; superimposed major episodes commonly complicate this disorder, usually with return to the low-grade depressive baseline upon recovery." The Merck Manual 1593 (16th ed. 1992)
 
 
 [2]
 Mellaril is indicated for the "short-term treatment of moderate to marked depression with variable degrees of anxiety"; Tofranil is indicated for treatment of depression. Physicians' Desk Reference 2107, 1070-71 (47th ed. 1993)